**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| HOSSEIN ISBITAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 14CV10444 |
| vs. | ) | |
| | ) | Judge |
| The VILLAGE OF ROUND LAKE HEIGHTS, | ) | |
| Illinois, a Municipal Corporation and Police | ) | Magistrate Judge |
| Chief JOHN ROEHLK, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, HOSSEIN ISBITAN, through his attorneys, Thomas P. Needham and Torreya L. Hamilton, makes the following complaint against the Defendants The VILLAGE OF ROUND LAKE HEIGHTS (Defendant VILLAGE), and its Police Chief, JOHN ROEHLK (Defendant ROEHLK):

## JURISDICITON AND VENUE

1.  This is an action brought by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000(e) et seq., 42 U.S.C. Sec. 1983 and Illinois common law.

2.  This court has jurisdiction of this case pursuant to 28 U.S.C. Sec. 1331, 1343, and 1367.

3.  Venue is proper under 42 U.S.C. Sec. 2000(e)-5(f)(3). All parties reside in this judicial district and the events pertaining to the claims made in this complaint occurred in this district.

4.  Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission, as required by Section 2000e-16, and subsequently received a "right to sue letter" dated December 11, 2014.

## PARTIES

5.  Plaintiff HOSSEIN "SAM" ISBITAN is a 31 year old man, a former employee of the

Defendant VILLAGE OF ROUND LAKE HEIGHTS, a United States citizen, and a resident of Illinois.

6. Defendant VILLAGE is a municipal corporation, duly incorporated under the laws of the State of Illinois. Defendant VILLAGE is an employer, as defined by Title VII of the Civil Rights Act of 1964, and was at all times relevant to this complaint Plaintiff's employer.

7. Defendant JOHN ROEHLK is an employee of Defendant VILLAGE and the chief of its Police Department. At all relevant times to this complaint, Defendant ROEHLK was Plaintiff's supervisor.

## FACTS

8. On November 12, 2013, Plaintiff was hired as a Round Lake Heights police officer by Defendant VILLAGE.

9. Defendant ROEHLK personally interviewed Plaintiff and approved his hiring.

10. After Plaintiff was hired, Defendant ROEHLK began to make lewd, inappropriate and unprofessional comments to Plaintiff.

11. The comments Defendant ROEHLK made towards Plaintiff were based on the fact that ROEHLK was sexually and physically attracted to Plaintiff, and thus wanted to have a personal and romantic relationship with him.

12. For example, Defendant ROEHLK complimented Plaintiff for "looking sexy," stated that he was "hot," and asked Plaintiff to go shopping with him.

13. In the first several weeks after being hired, Defendant ROEHLK invited Plaintiff on several occasions to spend the night at his home.

14. Plaintiff declined ROEHLK'S invitations to spend the night with him.

15. At a holiday party in late December, 2013, Defendant ROEHLK physically touched Plaintiff in the presence of others, rubbing his shoulders and back and hugging him.

16. In early January, 2014, while riding in a squad car with Plaintiff, Defendant ROEHLK told Plaintiff that he was "sexy" and complimented him on how his arms looked.

17. Also in January, 2014, Plaintiff and ROEHLK attended a training class together. During a lunch break at this class, ROEHLK told Plaintiff that they should spend time together while they were off duty, and suggested that they could enjoy outdoors activities together.

18. On several occasions, ROEHLK took photographs of Plaintiff when Plaintiff was not looking, and then sent the photos to Plaintiff via text or email.

19. Throughout the first several months of 2014, Defendant ROEHLK repeatedly tried to get Plaintiff to agree to have a personal and romantic relationship with him.

20. Plaintiff did not wish to have a romantic relationship with ROEHLIK, and refused his overtures.

21. Defendant ROEHLK persisted in wooing Plaintiff, and began to give him gifts and greeting cards.

22. For Valentine's Day, ROEHLK left pieces of chocolate candy in the police vehicle that Plaintiff was assigned to work in; he also left chocolate candy in Plaintiff's mailbox at the police station.

23. Plaintiff received a Saint Patrick's Day greeting card from ROEHLK, which was stated "You are my lucky charm," and was signed "SECRET ADMIRR!" (sic)

24. Defendant ROEHLK frequently contacted Plaintiff on days when Plaintiff was not working, inquired about his personal life and what he was doing, and telling Plaintiff that he also stated missed him.

25. In January, 2014, ROEHLK attended a concert while off duty. He called Plaintiff from this concert and told Plaintiff that he wished he (i.e. Plaintiff) was there at the concert with him.

26. On one occasion, ROEHLK contacted Plaintiff while Plaintiff was at home to ask what he was doing that day. Plaintiff responded to ROEHLK that he was going to go for a run, and

3

ROEHLK then wanted to know if Plaintiff would go running without a shirt, because that would be "so hot."

27. On several occasions, ROEHLK asked to see Plaintiff with his shirt off. Plaintiff refused these requests, and he also began dressing at home before work rather than using the police department's locker room, so that he could avoid having to change clothes with ROEHLK nearby.

28. When ROEHLK learned that Plaintiff was the fan of a certain college football team, he purchased a hat with the team's insignia on it and gave it to Plaintiff as a gift.

29. In March, 2014, both Plaintiff and ROEHLK attended the funeral of a police officer from another community. At this funeral, ROEHLK told Plaintiff that he looked very sexy and wanted to have his photograph taken with Plaintiff.

30. At work, ROEHLK frequently stared at Plaintiff, took Plaintiff's photograph for no reason, and complemented Plaintiff about his physical appearance.

31. On several occasions during 2014, while Plaintiff was at work, ROEHLK approached him and touched him inappropriately; for example, he tried to hug Plaintiff and at other times rubbed his back.

32. ROEHLK often invited Plaintiff to dinner and other social events.

33. On one occasion in March, 2014, ROEHLK made a pizza for Plaintiff and brought it to work. On this same date, ROEHLK asked Plaintiff if he could call him "baby." Plaintiff said no.

34. Beginning when Plaintiff was hired by Defendant VILLAGE and Defendant ROEHLK, he regularly received text messages from ROEHLK which showed that ROEHLK was determined to have a romantic and sexual relationship with Plaintiff.

35. Some examples of these text messages from ROEHLK include:

    a.  ROEHLK texted Plaintiff "I struck gold with you Sam."

4

b. ROEHLK texted Plaintiff "If I get fired or move to a different department, I'll hire you immediately."

c. ROEHLK texted Plaintiff "I couldn't be more pleased with the excellent officer you've become and the man that you are. You truly are my rock star."

d. ROEHLK sent a text of a photograph of a piece of candy to Plaintiff; the candy was shaped like a heart and contained the words "I FUCKING LOVE YOU."

e. ROEHLK sent Plaintiff a text bemoaning the fact that he did not hire him sooner, stating "I could kick myself … I could've known you 4 months earlier."

f. When the weather turned warm, ROEHLK sent a message to Plaintiff which stated "60 tomorrow … Shirtless weather 4 U."

g. ROEHLK sent Plaintiff a message where he gushed about how great it was to have met Plaintiff: "You lifted me out of my slight depression. You gave me hope, sense of purpose … the impact you had on me personally is astounding."

h. Several text messages from ROEHLK described Plaintiff as a "stud," a "stud-muffin," and a "rock star."

i. Once, when ROEHLK was in Las Vegas, he sent text messages to Plaintiff which stated "Sam, I miss you so much," "Wish you were here," "missing you man," and also "88 today! You would love this. You'd be the star of the pool."

36. In April, 2014, Defendant ROEHLK invited Plaintiff to attend the Chicago Cubs opening day baseball game with him.

37. Plaintiff declined, and responded to ROEHLK that he already had plans to go to this game with friends.

38. ROEHLK became upset at this refusal, and in April, 2014, Defendant ROEHLK sent Plaintiff a text message stating "I've done everything I know how to invite you into my personal life,

something I rarely do, but it's clear you don't want to be there. So I'll just dtop [sic] trying."

39. During April and May, 2014, Defendant ROEHLK then became hostile, moody, and rude to Plaintiff at work.

40. ROEHLIK began to criticize Plaintiff's performance at work.

41. On several occasions, Plaintiff complained about Defendant ROEHLK'S inappropriate and bizarre behavior to another employee of Defendant VILLAGE, Sgt. Scott Crawford.

42. Sgt. Crawford however took no action, provided Plaintiff with no guidance, and did nothing to investigate Plaintiff's complaints.

43. Plaintiff also told other employees of Defendant VILLAGE about ROEHLK'S misconduct; however, none of them took any action to either investigate ROEHLK or stop his behavior.

44. On August 12, 2014, Defendant ROEHLK called Plaintiff into his office and fired him.

45. Plaintiff asked ROEHLK why he was being fired, and the only response from ROEHLK was that he was not "fitting in" at the police department.

46. Prior to being fired, Plaintiff's work as a member of the Defendant VILLAGE'S police department was exemplary, and in fact Defendant ROEHLK repeatedly praised Plaintiff's performance to both Plaintiff himself and others.

47. As a result of all that has happened to him, Plaintiff has suffered great embarrassment and stress as well as the loss of his job.

48. As of the date of this filing, Plaintiff has made valiant efforts to find another law enforcement job, but has not been able do so. Plaintiff has been repeatedly informed that this is because he was fired by Defendant ROEHLK.

## COUNT I
(Title VII - Sexual Discrimination and Workplace Harassment Claim)

49. Plaintiff hereby incorporates each of the preceding paragraphs as if fully re-stated here.

50. At all relevant times, Defendant ROEHLK was Plaintiff's supervisor.

51. The conduct of Defendant ROEHLK towards Plaintiff, as described above, was unwelcome, and occurred because of Plaintiff's gender.

52. The conduct of Defendant ROEHLK, as described above, was so severe that it created for Plaintiff a hostile and abusive work environment.

53. As more fully described above, Defendant ROEHLK committed an unlawful employment practice by treating Plaintiff differently because of his gender, and also caused a change in the conditions of his employment and subjected him to a hostile work environment by his persistent attempts to establish a romantic and sexual relationship with him.

54. Defendants have thus denied Plaintiff rights that are protected under the Civil Rights Act of 1964.

55. Plaintiff has suffered damages as a direct result of his rights being violated, and they will be proven at trial.

WHEREFORE, Plaintiff prays for a judgment against Defendant VILLAGE in a fair and just amount sufficient to compensate Plaintiff for his damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

## COUNT II
(Title VII – Wrongful Termination Claim)

56. Plaintiff hereby incorporates each of the preceding paragraphs as if fully re-stated here.

57. When Defendant ROEHLK fired Plaintiff from his job as police officer for Defendant VILLAGE, he did so because Plaintiff refused ROEHLK'S persistent romantic and sexual overtures.

58. When Defendant ROEHLK fired Plaintiff, he was discriminating against Plaintiff because of Plaintiff's gender.

59. Defendants have thus denied Plaintiff rights that are protected under the Civil Rights Act of 1964.

7

60. Plaintiff has suffered damages as a direct result of his rights being violated, and they will be proven at trial.

WHEREFORE, Plaintiff prays for a judgment against Defendant VILLAGE in a fair and just amount sufficient to compensate Plaintiff for his damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

## COUNT III
(Title VII-Retaliation Claim)

61. Plaintiff hereby incorporates the preceding paragraphs as if fully re-stated here.

62. At all relevant times, Sergeant Crawford and Defendant ROEHLK were Plaintiff's supervisors.

63. As more fully described above, Sergeant Crawford and Defendant ROEHLK have committed an unlawful employment practice by retaliating against Plaintiff after he made a charge of sexual harassment and discrimination against Defendant ROEHLK.

64. Defendant VILLAGE, through its agents, specifically Defendant ROEHLK and Sergeant Crawford, violated Title VII by treating Plaintiff differently after he complained about ROEHLK'S misconduct.

65. Plaintiff was thus denied rights that are protected under the Civil Rights Act of 1964.

66. Plaintiff has suffered damages as a direct result of his rights being violated, and they will be proven at trial.

WHEREFORE, Plaintiff prays for a judgment against Defendant VILLAGE in a fair and just amount sufficient to compensate Plaintiff for his damages as well as court costs, attorney's fees, and such other relief as is just and equitable.

## COUNT IV
(§1983 Equal Protection Claim)

67. Plaintiff hereby incorporates the preceding paragraphs as if fully re-stated here.

68. Defendant ROEHLK has treated Plaintiff differently than other similarly situated individuals

without any legitimate governmental purpose for doing so.

69. Defendant ROEHLK'S actions with respect to Plaintiff were motivated at least in part by a discriminatory purpose, in violation of Plaintiff's constitutional rights to Equal Protection under the law.

70. As a direct and proximate result of this equal protection violation, Plaintiff has suffered damages, including emotional damages, which will be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant ROEHLK in a fair and just amount sufficient to compensate Plaintiff for the damages he has suffered, plus a substantial sum in punitive damages, as well as costs, attorneys' fees and such other relief as is just and equitable.

**COUNT V**
(Illinois Battery Claim)

71. Plaintiff hereby incorporates the preceding paragraphs as if fully re-stated here.

72. Defendant ROEHLK'S physical contact with Plaintiff on several occasions while at work was insulting and offensive, was done intentionally and knowingly, and without Plaintiff's consent or acquiescence.

73. Defendant ROEHLK's acts of battery upon Plaintiff were willful and wanton.

74. As a proximate result of Defendant ROEHLK'S acts of battery, Plaintiff has suffered humiliation, embarrassment, anxiety and other emotional damages which will be proven at trial.

75. Illinois law provides that public entities, such as Defendant VILLAGE, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

76. At all relevant times, Defendant ROEHLK was an agent of Defendant VILLAGE and an employee of the VILLAGE OF ROUND LAKE HEIGHTS Police Department, acting within the scope of his employment. Defendant VILLAGE, therefore, is liable as principal for all torts committed by its agents, Defendant ROEHLK.

WHEREFORE, Plaintiff prays for a judgment against Defendant ROEHLK and Defendant VILLAGE in a fair and just amount, sufficient to compensate Plaintiff for his damages, plus a substantial sum in punitive damages against Defendant ROEHLK and such other relief as is just and equitable.

### COUNT VI
#### (Illinois Intentional Infliction of Emotional Distress Claim)

77. Plaintiff hereby incorporates the preceding paragraphs as if fully restated here.

78. As more fully described above, Defendant ROEHLK's intentional, willful and wanton misconduct towards Plaintiff was extreme and outrageous.

79. As a proximate result of Defendant ROEHLK'S intentional conduct, Plaintiff has suffered great humiliation and severe emotional distress.

80. Illinois law provides that public entities, such as Defendant VILLAGE, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

81. At all relevant times, Defendant ROEHLK was an agent of Defendant VILLAGE and an employee of the Chicago Police Department acting within the scope of their employment. Defendant VILLAGE, therefore, is liable as principal for all torts committed by its agent Defendant ROEHLK.

WHEREFORE, Plaintiff prays for a judgment against Defendant ROEHLK and Defendant VILLAGE in a fair and just amount, sufficient to compensate Plaintiff for his damages, plus a substantial sum in punitive damages against Defendant ROEHLK and such other relief as is just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

HOSSEIN ISBITAN, Plaintiff

By: /s Thomas P. Needham
One of Plaintiff's Attorneys

LAW OFFICE OF THOMAS P. NEEDHAM
11 South LaSalle Street, Suite 1000
Chicago, IL 60603
312.726.3173
tpn@needhamlaw.com
Attorney No. 6188722

By: /s/ Torreya L. Hamilton
One of Plaintiff's Attorneys

HAMILTON LAW OFFICE, LLC
11 S. LaSalle Street, Suite 1000
Chicago, IL 60603
312.726.3171
tlh@thehamiltonlawoffice.com
Attorney No. 6229397